## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| DANIEL CALLAHAN, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:21-cv-12832 |
| | ) | |
| vs. | ) | Hon. Robert H. Cleland |
| | ) | |
| AMERICAN CITY BUSINESS JOURNALS, INC. | ) ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendant. | ) | |

## DEFENDANT AMERICAN CITY BUSINESS JOURNALS, INC.'S MOTION TO DISMISS

Defendant American City Business Journals, Inc. ("ACBJ") respectfully moves this Court to dismiss Plaintiff's Complaint as time-barred, with prejudice. Pursuant to Local Rule 7.1(a), Defendant's counsel certifies that on May 20, 2022, they communicated in writing to Plaintiff's counsel, explaining the nature of the relief sought in this Motion, and seeking concurrence in that relief. Plaintiff's counsel stated that they would oppose this Motion.

Plaintiff's claim for invasion of privacy in violation of the Michigan Preservation of Privacy Act—as well as those claims alleged on behalf of the putative class members—are time-barred under the applicable three-year statute of limitations, MCL § 600.5805(2).

Dated: May 23, 2022          Respectfully submitted,


/s/ *Kristen C. Rodriguez*
DENTONS US LLP
Natalie J. Spears
Kristen C. Rodriguez
Emily A. Golding
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel: (312) 876-8000
natalie.spears@dentons.com
kristen.rodriguez@dentons.com
emily.golding@dentons.com

CLARK HILL PLC
Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
151 South Old Woodward Avenue,
Suite 200
Birmingham, MI 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant American City Business Journals, Inc.*

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| DANIEL CALLAHAN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:21-cv-12832 |
| vs. | ) ) | Hon. Robert H. Cleland |
| AMERICAN CITY BUSINESS JOURNALS, INC. | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendant. | ) | |

## BRIEF IN SUPPORT OF DEFENDANT AMERICAN CITY BUSINESS JOURNALS, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED............................................................ vii

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY . viii

INTRODUCTION ...............................................................................................1

STATEMENT OF FACTS ...................................................................................2

    A.    History Of The Michigan PPPA. ........................................................2

    B.    Plaintiff Daniel Callahan And His Untimely Claims.........................4

ARGUMENT ......................................................................................................6

I.    Plaintiff's Complaint Is Time Barred And Should Be Dismissed
    Pursuant To Rule 12(b)(6). ..............................................................6

    A.    The Three-Year Limitations Period in MCL § 600.5805(2)
        Governs All Actions For "Injury To A Person," Including Invasion
        Of Privacy Claims. .............................................................7

    B.    Plaintiff's PPPA Claim Seeks Damages For An "Injury to A
        Person." ...............................................................................8

    C.    The "Catch-All" Six Year Limitations Period Does Not Apply.......13

II.    Alternatively, To The Extent Plaintiff Asserts A Bare Statutory Violation,
    Rather Than A Claim Ror Personal Injury, Plaintiff Lacks Article III
    Standing And Dismissal Is Required Under Rule 12(b)(1)........................20

CONCLUSION ..................................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arent v. Hatch*,
349 N.W.2d 536 (Mich. Ct. App. 1984) ..................................................................8

*Aslani v. Sparrow Health Systems*,
No. 1:08-CV-298, 2009 WL 736654 (W.D. Mich. Mar. 12, 2009) ...................18

*Boelter v. Advance Magazine Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016) ....................................................10, 21, 22

*Boelter v. Hearst Communications, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ................................................................13

*Bufalino v. Michigan Bell Telephone Co.*,
404 F.2d 1023 (6th Cir. 1969) ...........................................................................17

*Consolidated Rail Corp. v. Yashinsky*,
170 F.3d 591 (6th Cir. 1999) ...............................................................................6

*Cooper v. Team Wellness (Mental Health) Services Supervisor*,
18-1162, 2018 WL 7360647 (6th Cir. Oct. 11, 2018) .........................................8

*Coulter-Owens v. Time Inc.*,
695 Fed. App'x 117 (6th Cir. 2017) .......................................................4, 11, 22

*Dabish v. McMahon*,
818 F. App'x 423 (6th Cir. 2020) ......................................................................16

*Dalley v. Dykema Gossett*,
788 N.W.2d 679 (Mich. Ct. App. 2010) .............................................................19

*In re Darvocet, Darvon, & Propoxyphene Product Liability Litigation*,
756 F.3d 917 (6th Cir. 2014) .............................................................................17

*Derderian v. Genesys Health Care Systems*,
689 N.W.2d 145 (Mich. Ct. App. 2004) ..............................................................8

ii

*Doe v. Mills*,
    536 N.W.2d 824 (1995) ...............................................................................12, 19

*Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*,
    692 N.W.2d 398 (Mich. Ct. App. 2004)..............................................................19

*Duran v. Detroit News, Inc.*,
    504 N.W.2d 715 (Mich. Ct. App. 1993)..............................................................19

*Edwards v. Hearst Communications, Inc.*,
    No. 15-cv-9279, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) ..........................13

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) .......................................................................10, 11

*Fry v. Ionia Sentinel-Standard*,
    300 N.W.2d 687 (Mich. Ct. App. 1980)..............................................................19

*Garden City Osteopathic Hospital v. Hbe Corp.*,
    55 F.3d 1126 (6th Cir. 1995) ...........................................................................8, 9

*Garg v. Macomb Cty. Community Mental Health Services*,
    696 N.W.2d 646 (Mich. 2005)............................................................................17

*Green v. Lansing Automakers Federal Credit Union*,
    No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019) .......7, 8, 12, 17

*Halaburda v. Bauer Publishing Co., LP*,
    No. 12-CV-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) ...............9, 11

*Hall v. Farm Journal, Inc.*,
    No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022)........................15, 17, 22

*Hardy v. Maxheimer*,
    416 N.W.2d 299 (Mich. 1987)............................................................................16

*Herrin v. Dunham*,
    481 F. Supp. 2d 854 (E.D. Mich. 2007) ...............................................................7

*Lewis v. LeGrow*,
    670 N.W.2d 675 (Mich. Ct. App. 2003)..............................................................19

*Lin v. Crain Communications Inc.*,
No. 19-11889, 2020 WL 248445 (E.D. Mich. Jan. 16, 2020) ........................... 11

*Loc. 1064, RWDSU AFL-CIO v. Ernst & Young*,
535 N.W.2d 187 (Mich. 1995) ....................................................................... 7, 14

*Magee v. Daimler Chrysler Corp.*,
693 N.W.2d 166 (Mich. 2005) ............................................................................ 17

*Major v. Village of Newberry*,
892 N.W.2d 402 (Mich. Ct. App. 2016) ............................................................. 17

*Marks v. Hulstrom*,
No. 294453, 2010 WL 2134303 (Mich. Ct. App. May 27, 2010) ...................... 16

*Marsh v. Crummel*,
No. 204941, 1999 WL 33446752 (Mich. Ct. App. Apr. 23, 1999) ................... 19

*Marshall v. Chrysler Corp.*,
378 F. Supp. 94 (E.D. Mich. 1974) .................................................................... 17

*McCree v. Continental Management, LLC*,
No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021) ...................... 16

*Mcintyre v. Ogemaw County Board of Commissioners*,
15-CV-12214, 2016 WL 4917537 (E.D. Mich. Sept. 15, 2016) ......................... 8

*Moeller v. American Media, Inc.*,
235 F. Supp. 3d 868 (E.D. Mich. 2017) ...................................................... 10, 11

*National Sand, Inc. v. Nagel Construction, Inc.*,
451 N.W.2d 618 (Mich. Ct. App. 1990) .............................................................. 8

*New England Health Care Employers Pension Fund v. Ernst &
Young, LLP*,
336 F.3d 495 (6th Cir. 2003) ............................................................................... 6

*Ott v. Midland-Ross Corp.*,
523 F.2d 1367 (6th Cir. 1975) ............................................................................. 6

*Palmer Park Square, LLC v. Scottsdale Insurance Co.*,
878 F.3d 530 (6th Cir. 2017) ............................................................... 15, 17, 18

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017) ..............................................................9

*Perry v. Cable News Network, Inc.*,
    854 F.3d 1336 (11th Cir. 2017) .......................................................................10

*Pratt v. KSE Sportsman Media, Inc.*,
    No. 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) ....15, 17, 18,
    22

*Rapp v. Putman*,
    644 F. App'x 621 (6th Cir. 2016) ....................................................................17

*Rentola v. Dow Jones & Co., Inc.*,
    No. 4:20-cv-11589-SDD-EAS (E.D. Mich) ...................................................14

*Rhule v. Armstrong*,
    187 N.W.2d 223 (Mich. 1971).........................................................................16

*Ruppel v. Consumers Union*,
    16-cv-02444 (S.D.N.Y.) .............................................................................3, 4

*Smith v. Calvary Christian Church*,
    614 N.W.2d 590 (Mich. 2000).........................................................................19

*Spokeo v. Robins*,
    578 U.S. 330 (2016).....................................................................................20, 22

*Tocarchick v. UAW Region 1*,
    No. 15-CV11329, 2015 WL 5026149 (E.D. Mich. Aug. 21, 2015)....................6

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021).............................................................................20, 21, 23

*United States v. Johnson*,
    34 F. Supp. 2d 535 (E.D. Mich. 1998) ............................................................18

*In re Vizio, Inc. Consumer Privacy Litigation*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......................................................9, 11

*Ward v. National Patient Account Services Solutions, Inc.*,
    9 F.4th 357 (6th Cir. 2021) ..............................................................................10

*Wiggins v. Nationstar Mortgage LLC*,
   No. 14-CV-12680, 2015 WL 4967137 (E.D. Mich. Aug. 20, 2015) ..................6

*Yershov v. Gannet Satellite Infornation Network, Inc.*,
   204 F. Supp. 3d 353 (D. Mass. 2016) ...............................................................11

**Statutes**

1988 Mich. Pub. Act No. 378 ...................................................................................2

MCL § 445.1711 ......................................................................................................4

MCL § 445.1712 ......................................................................................................3

MCL § 445.1715 ......................................................................................3, 4, 9, 19

MCL § 600.5805 ...............................................................................................*passim*

MCL § 600.5813 ...............................................................................................14, 15

**Other Authorities**

Privacy: *Sales, Rentals of Video, etc.*, Senate Fiscal Agency, Bill
   Analysis, H.B. No. 4694, Nov. 10, 1989, found at
   http://www.legislature.mi.gov/documents/1989-
   1990/billanalysis/Senate/pdf/1989-SFA-4694-A.pdf ........................................9

**STATEMENT OF ISSUES PRESENTED**

1. Whether Plaintiff's claims under the Michigan Preservation of Personal Privacy Act ("PPPA") are time-barred by the three-year statute of limitations in MCL § 600.5805(2) because the PPPA claim is for an injury to a person, just like other traditionally recognized common law invasion of privacy claims?

Defendant's Answer: YES.

2. Whether Plaintiff lacks Article III standing to bring this class action suit if he denies that the PPPA is a claim for an injury to a person traditionally recognized at common law because Article III standing for a statutory claim without actual damages, like the one Plaintiff brings here, must be premised on a close common-law analogue for a plaintiff's asserted injury?

Defendant's Answer: YES.

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

The controlling authority for this Motion includes:

1. MCL § 600.5805(2)

2. *Local 1064, RWDSU AFL-CIO v. Ernst & Young*, 535 N.W.2d 187 (Mich. 1995)

3. *Green v. Lansing Automakers Federal Credit Union*, No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019)

4. *Arent v. Hatch*, 133 Mich. App. 700, 349 N.W.2d 536 (1984)

5. *Rhule v. Armstrong*, 384 Mich. 709 (Mich. 1971)

6. *McCree v. Continental Management., LLC*, No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021)

7. *Garg v. Macomb County Community Mental Health Services*, 696 N.W.2d 646 (Mich. 2005)

8. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021)

# INTRODUCTION

This action is time barred.  Plaintiff seeks to bring a putative class action against Defendant American City Business Journals, Inc. ("ACBJ")—which publishes metropolitan business newsweeklies across the country and corresponding websites in certain markets, as well as *Hemmings* car enthusiast magazines—in a quest for millions of dollars in collective statutory damages under Michigan's Preservation of Personal Privacy Act (the "PPPA").  Plaintiff asserts a traditional personal injury—namely, a purported invasion of privacy—based on the alleged disclosure by ACBJ of what he calls his "Private Reading Information."  According to Plaintiff, the alleged invasion of his privacy amounts to a violation of the pre-July 31, 2016 version of the PPPA, which included a $5,000 statutory penalty that the Michigan legislature has since removed.

The PPPA does not include a limitations period for claims brought under that statute.  But because the Plaintiff asserts a statutory claim for personal injury that codifies the common law tort for invasion of privacy, the PPPA is governed by the three-year statute of limitations in MCL § 600.5805(2), as even Plaintiff's counsel has conceded in prior PPPA cases.  Any claim under the pre-July 31, 2016 version of the PPPA therefore expired on July 30, 2019.  Thus, Mr. Callahan simply waited too long to bring his claim, and his Complaint should be dismissed with prejudice.

1

Alternatively, if Plaintiff contends that his PPPA claim is not a claim for "injury to a person," then he lacks Article III standing. Plaintiff cannot have it both ways: either he has asserted a claim rooted in the common law tort for invasion of privacy, making § 600.5805(2) apply; or he alleges purely statutory violations without any common law analogue, foreclosing his ability to establish Article III standing under recent Supreme Court precedent.

Either way, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

### A.    History Of The Michigan PPPA.

The Michigan legislature passed the PPPA in 1988 to address concerns related to "unwarranted invasion of privacy." Privacy: Sales, Rentals of Videos, etc., House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989 (attached to Complaint as Ex. B, ECF 1-3, PageID.31); *see also* 1988 Mich. Pub. Act No. 378 (PPPA is "[a]n act to *preserve personal privacy* with respect to the purchase, rental, or borrowing of certain materials; and to provide penalties and remedies for violation of this act") (emphasis added).

The PPPA was passed in the wake of a federal statute, the "Video Privacy Protection Act," which was enacted following the disclosure of Supreme Court nominee Judge Robert Bork's video rental choices in a newspaper. Michigan's law went further than the federal Act, however. In addition to video rental records, its

scope includes "books or other written materials," proscribing certain "disclosures" of records or information "concerning the purchase, lease, rental, or borrowing of those materials."  MCL § 445.1712 (1989).

The Michigan statute largely sat on the books for nearly 30 years until plaintiffs' class action counsel started bringing a series of class action suits against magazine publishers over "direct marketing" mailing practices.[1]  The allure of class actions under the PPPA was a statutory damages provision that permitted an action for actual damages *or* $5,000 in statutory damages, whichever was greater.  MCL § 445.1715.

Not surprisingly, the prior PPPA class action suits (filed against companies in the publishing industry by the same plaintiffs' lawyers here) elected to pursue the statutory damages of $5,000 per subscriber in lieu of seeking actual damages, threatening "in terrorem" class action damages against an already struggling industry.[2]   In the wake of potentially crippling class action lawsuits against

---

[1] These class action suits attacked companies in the publishing industry that engaged in "list rental"—a well-established practice (that long predates the enactment of the PPPA) involving the private rental of subscriber lists to other companies so such other companies can mail advertisements directly to consumers.

[2] With little interpretive precedent, and facing potentially ruinous liability, many of the publishers sued prior to the effective date of the Michigan Legislature's elimination of the PPPA's statutory damages provision entered into multi-million dollar class settlements with the plaintiffs' lawyers who represent Callahan.  *E.g. Edwards v. Hearst,* 15-cv-09279 (S.D.N.Y.) ($50 MM); *Ruppel v. Consumers*

companies in the publishing industry, the Michigan Legislature amended the PPPA in 2016 to "cure and clarify" the statute (the "Amendment").[3]  Among other things, the 2016 Amendment expressly removed the provision for $5,000 statutory damages, and in its place provided that only a customer "who suffers actual damages as a result of a violation of this act may bring a civil action."  MCL § 445.1715(2). The Amendment took effect July 31, 2016; thus, July 30, 2016 was the last day that the $5,000 statutory damages provision was in place.[4]

### B.    Plaintiff Daniel Callahan And His Untimely Claims

Over five years after the Amendment, Plaintiff Daniel Callahan filed this Complaint on December 3, 2021.  Callahan's Complaint reads nearly verbatim to the dozens of other class action complaints against other publishers that were filed in this District in mid- to late-2021 by the same plaintiffs' lawyers, which are also the same lawyers that filed the first round of lawsuits against publishers.[5]  Callahan

---

*Union*, 16-cv-02444 (S.D.N.Y.) ($16.375 MM); *Boelter v. Advance Magazine Publishers* ("*Condé Nast*"), 15-cv-05671 (S.D.N.Y.) ($13.75 MM).

[3] S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at MCL § 445.1711).

[4] The Sixth Circuit has determined that the 2016 Amendment applied only prospectively, beginning on July 31, 2016, because the Amendment did not use "retroactive" language.  *See, e.g., Coulter-Owens v. Time Inc.*, 695 Fed. App'x 117, 121 (6th Cir. 2017).

[5] There are at least 20 other cases pending in Michigan federal courts, all filed by the same lead plaintiffs lawyers.  In many of these cases, motions to dismiss have been filed based on similar arguments presented here, and many of those motions remain pending as of this filing.

4

alleges that he was a subscriber to ACBJ's *Hemmings Classic Car* magazine.  He alleges that ACBJ "rented, exchanged, and/or otherwise disclosed detailed information" about his "Private Reading Information"—*i.e.*, his name, home address, and the title of the publication he purchased—to third parties without consent or notice, and that such disclosures violated the PPPA.  Compl. at ¶¶ 1, 3, 5. Callahan purports to represent a class of all Michigan residents who had their Private Reading Information disclosed to third parties by ACBJ without their consent during the relevant time period.  *See id.* at ¶ 49.  Callahan alleges no actual injury on behalf of himself or the putative class as a result of this purported conduct, but nonetheless seeks to recover the $5,000 statutory penalty for himself and all class members.

To take advantage of the $5,000 statutory penalty, meet the aggregate amount necessary for federal jurisdiction (because this putative class action is not allowed in Michigan state court),[6] and avoid the obligation to plead and prove each class member's "actual damages," Plaintiff explicitly brings his claim under the prior version of the PPPA, which, as explained above, expired as of July 31, 2016.  *See*

---

[6] Although Plaintiff's claims are based exclusively on a Michigan state law, Plaintiff initiated this action in federal court, basing jurisdiction on the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").  *See* Compl. at ¶ 11.  This case is only possible due to a loophole under CAFA, as Michigan Court Rule 3.501(A)(5) does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes the class device, which the PPPA does not and did not, even before it was amended.  As a result, Plaintiff filed his purported class action under this Michigan statute in federal court because the identical class action *could not proceed* in Michigan state court.

*id.* at ¶¶ 1 (at n.2), 3, 9, 49, 60, 65, 69, 70-72.  Thus, Plaintiff's PPPA claim is admittedly based solely on alleged violations occurring ***prior to*** July 31, 2016.  *See id*. at ¶ 72 ("By disclosing Plaintiff's and the Class's Personal Reading Information during the relevant pre-July 30, 2016 time period, ACBJ violated Plaintiff's and the Class's statutorily protected right to privacy in their reading habits.").  Plaintiff alleges no purported violations occurring after that date.

## ARGUMENT

### I.  Plaintiff's Complaint Is Time Barred And Should Be Dismissed Pursuant to Rule 12(b)(6).

"[A] complaint can be dismissed as barred by the applicable statute of limitation under Fed. R. Civ. P. 12(b)(6) when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief."  *Ott v. Midland-Ross Corp*., 523 F.2d 1367, 1369 (6th Cir. 1975); *see also New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).  As a federal court sitting in diversity, this Court applies Michigan's statutes of limitations.  *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 594 (6th Cir. 1999).  Michigan federal courts routinely dismiss complaints on Rule 12(b)(6) motions where, as here, the applicable statute of limitations on a claim has run.  *See, e.g.*, *Tocarchick v. UAW Region 1*, No. 15-CV11329, 2015 WL 5026149, at *4 (E.D. Mich. Aug. 21, 2015); *Wiggins v. Nationstar Mortg. LLC*, No. 14-CV-12680, 2015 WL 4967137, at *2 (E.D. Mich. Aug. 20, 2015).

A.    **The Three-Year Limitations Period In MCL § 600.5805(2) Governs All Actions For "Injury To A Person," Including Invasion Of Privacy Claims.**

MCL § 600.5805 plainly states "[a] person *shall not bring* or maintain an action to recover damages *for injuries to persons* or property unless … the action is commenced within the periods of time prescribed by this section."   MCL § 600.5805(1) (emphasis added).  MCL § 600.5805(2) then provides that "[e]xcept as otherwise provided in this section, the period of limitations is **3 years** after the time of the death or injury *for all actions* to recover damages for the death of a person or *for injury to a person* or property."  *Id.*  (emphasis added).

In Michigan, therefore, all claims for "injury to a person" must be brought within three years.  *See Loc. 1064, RWDSU AFL-CIO v. Ernst & Young*, 535 N.W.2d 187, 189 (Mich. 1995); *Herrin v. Dunham*, 481 F. Supp. 2d 854, 857 (E.D. Mich. 2007) (applying the three-year statute of limitations to claims under 42 U.S.C. § 1983 and observing that, "[i]n Michigan, one statute of limitations applies to all personal injury claims.").

A claim for invasion of privacy is a claim alleging an "injury to a person" within the meaning of MCL § 600.5805(2).  *See Green v. Lansing Automakers Fed. Credit Union*, No. 342373, 2019 WL 3812108, at *5 (Mich. Ct. App. Aug. 13, 2019).  Michigan precedent "takes an expansive view of what constitutes 'injuries to persons,'" defining the term as "including 'invasions of rights that inhere in man as

a rational being.'" *Nat'l Sand, Inc. v. Nagel Construction, Inc.*, 451 N.W.2d 618, 621–22 (Mich. Ct. App. 1990) (internal citations omitted).

Consistent with this broad definition of "injury to a person," Michigan courts routinely apply § 600.5805(2)'s three-year statute of limitations in cases alleging invasion of privacy. *See Green*, 2019 WL 3812108, at *5 (three-year limitation period applied to invasion of privacy, unlawful intrusion claim); *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159-60 (Mich. Ct. App. 2004) (three-year limitations period applied to invasion of privacy, false-light claim).[7] Plaintiff's claim under the PPPA is for invasion of privacy, and therefore § 600.5805(2)'s three-year statute of limitations applies.

## B.   Plaintiff's PPPA Claim Seeks Damages For An "Injury to A Person."

The "nature and origin" of a claim determines its applicable statute of limitations. *Garden City Osteopathic Hosp. v. Hbe Corp.*, 55 F.3d 1126, 1133 (6th Cir. 1995) (predicting Michigan law). As the Sixth Circuit explained, the crucial distinction between Michigan's various statutes of limitations is the type of injury

---

[7] *See also Arent v. Hatch*, 349 N.W.2d 536, 539 (Mich. Ct. App. 1984) (applying the three-year limitations period to invasion of privacy claim); *Cooper v. Team Wellness (Mental Health) Services Supervisor*, No. 18-1162, 2018 WL 7360647, at *2 (6th Cir. Oct. 11, 2018) ("The statute of limitations for the invasion of privacy and fraud in Michigan is three years.") (citing MCL § 600.5805(2)); *Mcintyre v. Ogemaw County Bd. of Commissioners*, 15-CV-12214, 2016 WL 4917537, at *3 (E.D. Mich. Sept. 15, 2016) (applying three-year statute of limitations to common law privacy claim).

that serves as the source of the claimed damages: "[W]hat differentiates [Michigan's statutes of limitations] is what the damages are sought 'for' . . ." *Id.*

Here, the PPPA "was created by [the Michigan] legislature to protect individual consumers from certain disclosures of their personal information." *Halaburda v. Bauer Pub. Co., LP,* No. 12-CV-12831, 2013 WL 4012827, at *6 (E.D. Mich. Aug. 6, 2013). A civil action under the prior version of the PPPA is an action for injury to a person because it seeks to recover damages "for harm done" to the person from the disclosure of purportedly private information.[8] Indeed, a civil claim under the relevant version of the PPPA is specifically "for damages <u>to the customer</u> identified in the record . . . disclosed in violation of this act," MCL § 445.1715 (emphasis added), further emphasizing the personal injury nature of the claim.

Moreover, numerous courts have found that the PPPA codifies the common law tort of invasion of privacy in the context of customers' video rental and reading materials. *See Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 641 (E.D. Mich. 2017) ("[T]he right guaranteed by the [PPPA] is <u>similar in kind to other privacy rights that were gradually recognized by American courts</u> over the course of the last century . .

---

[8] *Privacy: Sales, Rentals of Videos, etc.*, Senate Fiscal Agency, Bill Analysis, H.B. No. 4694, Nov. 10, 1989, found at http://www.legislature.mi.gov/documents/1989-1990/billanalysis/Senate/pdf/1989-SFA-4694-A.pdf (noting that the provision allowing for a monetary recovery was intended to provide for "the right to collect damages for harm done when details on a person's rentals or purchases are disclosed").

. ") (emphasis added); *Boelter v. Advance Mag. Publishers Inc*., 210 F. Supp. 3d 579, 590 (S.D.N.Y. 2016) (explaining that "the harms contemplated by [the PPPA and its federal analogue] <u>have close ties to those recognized by the common law tort of invasion of privacy</u>") (emphasis added); *Moeller v. Am. Media, Inc*., 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) ("Subscribers' right to privacy in their personal-reading information is grounded in an interest '<u>traditionally regarded as providing a basis for a lawsuit</u> in English or American courts.'") (citation omitted; emphasis added).  *See also Ward v. Nat'l Patient Acct. Servs. Sols., Inc*., 9 F.4th 357, 362 (6th Cir. 2021) ("Had Ward claimed, for example, that [Defendant] improperly shared personal information with a third party . . . then Ward's alleged harm would more closely resemble an invasion of privacy.").

Plaintiff's pleading itself recognizes that Michigan's PPPA has the same goals as the federal Video Privacy Protection Act, 18 U.S.C. § 2710, which spawned the passage of the PPPA.  *See* Compl. at ¶ 18.  And several courts have held that the Video Privacy Protection Act ("VPPA")—like Michigan's PPPA—codifies a common law right to privacy.  *See, e.g*., *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340-41 (11th Cir. 2017) ("[T]he VPPA's creation of a cause of action for this type of an invasion of privacy 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'"); *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 983 (9th Cir. 2017) (the

10

federal VPPA "codifies a context-specific extension of the *substantive* right to privacy") (underline added); *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1216 (C.D. Cal. 2017) ("Plaintiffs' VPPA claims are even more deeply rooted in the common law. Warren and Brandeis traced the development of the tort of invasion of privacy in part to cases involving the disclosure of information in breach of a confidential relationship."); *Yershov v. Gannet Satellite Info. Network, Inc.*, 204 F. Supp. 3d 353, 362 (D. Mass. 2016) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person.").

A claim for violation of the PPPA is therefore a claim for redress of a personal injury—invasion-of-privacy—that traditionally sounds in tort. *See, e.g., Coulter-Owens*, 695 F. App'x at 119 (noting that plaintiff claimed "an invasion of privacy in violation of Michigan's Preservation of Personal Privacy Act"); *Moeller*, 235 F. Supp. 3d at 873 (stating that violations of the PPPA are "invasion[s] of plaintiffs' privacy"); *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *5 (E.D. Mich. Jan. 16, 2020) (noting that the PPPA addressed "invasion[s] of a legally protected privacy interest"); *Halaburda,* 2013 WL 12246914, at *1 (stating that the PPPA is "a privacy right").

Plaintiff's own allegations likewise demonstrate that the PPPA claim he brings is exclusively based on violation-of-privacy harms. Plaintiff repeatedly

characterizes the alleged PPPA violations as invasions of his privacy.  For example, he describes ACBJ's purported disclosure of consumers' "Private Reading Information" as:

- "invasions of [consumers'] statutorily protected right to privacy (as afforded by the PPPA)" (Compl. at ¶ 52);
- a "form of surveillance" (*Id.* at ¶ 14);
- raising "serious privacy concerns."  (*Id.* at ¶ 29);
- revealing customers' "most intimate details"  (*Id.* at ¶ 44);
- "jeopardizing [ACBJ's] subscribers' privacy and well-being."  (*Id.* at ¶ 33.)

All of these purported harms are privacy-based harms rooted in traditional tort concepts providing remedies for personal injuries, and therefore are "injuries to a person" within the meaning of MCL § 600.5805(2).

Indeed, Plaintiff's own allegations mirror exactly the allegations necessary to assert a common law claim for invasion of privacy under Michigan law, even further evidencing that Plaintiff's PPPA claim is rooted in a theory of invasion of privacy. *Compare, Green*, 2019 WL 3812108, at *5 (stating that the elements of an invasion of privacy claim in Michigan are "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man.") (quoting *Doe v. Mills*, 536 N.W.2d 824, 832 (1995)), *with* Compl. ¶¶ 20, 38, 41, 44 (detailing how consumers' data is private and sensitive), ¶¶ 52, 72, 73 (detailing how the PPPA affords consumers a right to

privacy of their "Personal Reading information"); and ¶¶ 12, 46, 48, 49 (alleging the wrongful conduct on the part of ACBJ in obtaining and transmitting consumers' "Private Reading Information" "without consent.").

Plaintiff's allegations clearly assert harm in the form of "injury to a person." Plaintiff's claim is therefore governed by the three-year statute of limitations in MCL § 600.5805(2).

### C.    The "Catch-All" Six Year Limitations Period Does Not Apply.

Consistent with the plain, unambiguous language of § 600.5805(2) that imposes a three-year statute of limitations "for *all* actions to recover damages for . . . *injury to a person*," other federal courts outside of this District have applied § 600.5805(2)'s three-year limitations period to PPPA claims.  *See Edwards v. Hearst Communications, Inc.*, No. 15-cv-9279, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016) (noting that "a three-year statute of limitations admittedly governs [Plaintiff's PPPA] claims"); *Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017) (applying three-year statute of limitations to PPPA claims).  In fact, until it no longer served them to do so, Plaintiff's counsel here took the position, in prior PPPA suits with *identical* allegations as those alleged against ACBJ, that the PPPA was subject to a three-year statute of limitations, citing § 600.5805(2).[9]

---

[9] For example, in *Markham et al. v. National Geographic Partners, LLC*, in responding to an argument by defendants that § 600.5805(2) barred Plaintiffs' VRPA claims, plaintiffs' counsel argued that § 600.5805(2)'s three-year

Plaintiff here will nonetheless assert, as he does in his pleading (Compl. at ¶ 1, n.1), that the PPPA is subject to the "catch all" statute of limitations in MCL § 600.5813, which states that "[a]ll other personal actions shall be commenced within the period of 6 years after the claims accrue . . ." (Complaint ¶ 1, n.1). That is because if a three-year period applies, Plaintiff's claims under the prior version of the PPPA with the $5,000 statutory penalty are clearly time-barred. However, Section 600.5813 does not apply here. The Michigan Supreme Court ruled that "Section 5805 is a more specific statute of limitations than Section 5813 and ***therefore controls*** if applicable to this action." *Local 1064*, 535 N.W.2d at 189-90 (emphasis added). As discussed previously, the three-year period in Section

---

limitations period was tolled, without asserting that a six-year statute of limitations applied. *See Markham et al. v. National Geographic Partners, LLC*, No. 1:19-cv-00232, (W.D. Mich.), Plaintiff's Response to National Geographic Partner's LLC's Pre-Motion Conference Request, ECF 26 (Dec. 17, 2019). Similarly, in responding to a motion to dismiss in an earlier case on untimeliness grounds, plaintiffs' counsel unequivocally stated that "[c]laims under the [VRPA] are subject to a 'three year statute of limitations,'" and never invoked the six year limitations period. *Rentola v. Dow Jones & Co., Inc*., No. 4:20-cv-11589-SDD-EAS (E.D. Mich.), ECF 12 at PageID.196 (citing *Boelter* and MCL § 600.5805(2)). And in *Boelter v. Hearst,* Plaintiffs' counsel again admitted that a three-year statute of limitations applied to the VRPA claims and, to avoid a time-bar, argued instead that the three-year limitations period should be tolled. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss and for Summary Judgment, 2017 WL 4838016, ECF 163 (section heading: "VII. HEARST'S ARGUMENT THAT THERE IS NO BASIS TO TOLL THE THREE-YEAR STATUTE OF LIMITATIONS IS WRONG") (emphasis added).

600.5805(2) applies to "all actions" to recover damages "for injury to a person," and the Plaintiff's PPPA claim here is an action for injury to a person.

ACBJ acknowledges that two judges in this District have recently found that a six-year limitations period under MCL § 600.5813 applies to PPPA claims. In *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) and *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022) ("Slip Op."), Judge Ludington and Judge Lawson, respectively, denied the publisher defendants' motions to dismiss and determined that the plaintiffs' claims under the PPPA were subject to the catchall six-year statute of limitations for statutory claims.

Respectfully, those decisions are incorrect under the governing law. Both decisions turned on the courts' readings of *Palmer Park Square, LLC v. Scottsdale Insurance Co.*, 878 F.3d 530 (6th Cir. 2017). According to the decisions in *Pratt* and *Hall*, the Sixth Circuit ruled in *Palmer Park Square* that the six-year statute of limitations always applies to statutory causes of actions unless the relevant statute contains its own, specific statutory limitations period. *Pratt,* 2022 WL 469075, at *12; *Hall*, No. 2:21-cv-11811, Slip. Op. at PageID.714-16. But such interpretation would contradict decades of Michigan precedent that applied the three-year limitations in Section 600.5805(2) to statutory claims that allege injury to persons (or to specific property) when the statute is otherwise silent on a limitations period,

15

particularly—but not exclusively—where the claim resembles a traditional common law tort claim. *See e.g. Rhule v. Armstrong*, 187 N.W.2d 223 (Mich. 1971) (applying the three-year statute of limitations to a wrongful death claim—a statutory cause of action that did not exist at common law[10]—because "Michigan's wrongful death act is premised upon a tort theory.") (overruled on other grounds); *Marks v. Hulstrom*, No. 294453, 2010 WL 2134303, at *1 (Mich. Ct. App. May 27, 2010) (applying Section 600.5805(2) limitations period to statutory nuisance claim under MCL § 600.2940(1)); *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021) (holding that the three-year limitations period applies to the Housing Act of Michigan and Truth in Renting Act, which each created a statutory cause of action with no common-law analog); *Dabish v. McMahon*, 818 F. App'x 423, 427-29 (6th Cir. 2020) (claims brought under Michigan's Ethnic Intimidation statute, MCL § 750.147b, which created a statutory cause of action for personal injury or damage to property as a result of ethnic intimidation—a cause of

---

[10] *See Hardy v. Maxheimer*, 416 N.W.2d 299, 305 (Mich. 1987) ("At common law there was no civil cause of action for the death of a human being caused by the wrongful act or negligence of another, or for damages suffered by any person in consequence of such death.") (quoting *In re Olney's Estate*, 14 N.W.2d 574, 577 (Mich. 1944)) (emphasis removed).

action with no common-law equivalent—are subject to the three-year statute of limitations). There are numerous other examples.[11]

There is no reason to believe that *Palmer Park Square* intended to adopt a rule that conflicted with Michigan precedent. Nor could it. *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) ("On questions of state law, this Court is bound by the rulings of the state supreme court."). Rather, instead of announcing the blanket rule that *Pratt* and *Hall* deduced, the decision in *Palmer Park Square* turned on the nature of the claim that was before the court in that specific case: a claim for penalty interest on untimely-paid insurance benefits (a

---

[11] *Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 659 (Mich. 2005) (finding, in the context of a claim for discrimination on the basis of national origin and improper retaliation, which have no basis in common law, that "a person must file a claim under the Elliot-Larsen Civil Rights Act within three years of the date his or her cause of action accrues, as required by § 5805(10)."); *Major v. Vill. of Newberry*, 892 N.W.2d 402, 408 (Mich. Ct. App. 2016) (also applying the three-year limitations period to a claim brought under the Elliot-Larsen Civil Rights Act for age and sex discrimination and retaliation); *Green*, 2019 WL 3812108, at *4 (same); *Rapp v. Putman*, 644 F. App'x 621, 626 (6th Cir. 2016) ("In Michigan, it is the three-year statute of limitations for personal-injury claims" that applies to civil rights claims brought under 42 U.S.C. § 1983); *Magee v. Daimler Chrysler Corp.*, 693 N.W.2d 166, 168 (Mich. 2005) (same); *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023 (6th Cir. 1969) (claims under the Communications Act are governed by the three-year statute of limitations); *Marshall v. Chrysler Corp.*, 378 F. Supp. 94 (E.D. Mich. 1974) (superseded by statute as stated in *Stevens v. Tenn. Valley Auth.*, 712 F.2d 1047 (6th Cir. 1983)) (finding that the three-year statute of limitations applied to a claim under the Veterans' Re-employment Rights Act because it was "essentially one to recover damages for injury to property or person.").

cause of action created by the Michigan Insurance Code), *not* a claim sounding in tort for an injury to a person.  *Palmer Park Square*, 878 F.3d at 539.

Unlike the plaintiff's claim in *Palmer Park Square*, Plaintiff's PPPA claim in this case is for an "injury to a person" that falls squarely within MCL § 600.5805, not merely a "personal action."   As discussed previously, Mr. Callahan alleges an invasion of his interest in his personal privacy, which is a quintessential personal injury.  Thus, there is no question that a claim under the PPPA alleges harm that traditionally sounds in tort; it does not seek redress for a legal injury that is created purely by statute without a common-law personal-injury analogue.  *See Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 736654, at *7 (W.D. Mich. Mar. 12, 2009) (if certain statutes "do not provide their own statutes of limitation, the court 'borrows' the most closely analogous statute of limitations in the State where the events giving rise to the claims occurred.").  *Palmer Park Square* does not control the decision in this case, nor should *Pratt* or *Hall*.  *See, e.g., United States v. Johnson*, 34 F. Supp. 2d 535, 538, n.3 (E.D. Mich. 1998) ("A federal district court is not bound by the decision of another district court.").

Moreover, respectfully, neither Judge Ludington nor Judge Lawson considered an additional statutory argument evidencing a three-year, and not a six-year, statute of limitations applies to the PPPA—namely, that under both the prior version of the PPPA that Plaintiff invokes here (as well as the current version), a

plaintiff is explicitly allowed to seek damages for emotional distress. MCL §

445.1715.[12]  And in Michigan, claims for damages for either intentional or negligent

infliction of emotional distress are subject to a three-year statute of limitations. *See*

*Doe v. Roman Cath. Archbishop of Archdiocese of Detroit*, 692 N.W.2d 398, 403

(Mich. Ct. App. 2004); *Marsh v. Crummel*, No. 204941, 1999 WL 33446752, at *1

(Mich. Ct. App. Apr. 23, 1999) ("Claims for intentional or negligent infliction of

emotional distress must be brought within three years after they accrue in order to

avoid the limitation bar.").  It would be absurd for a plaintiff to have three additional

years to bring a claim for emotional distress damages under the PPPA versus a

plaintiff seeking the same type of damages for the tort of infliction of emotional

distress.

Michigan law is clear: actions to recover damages arising out of injury to a

person are governed by the three-year limitations in § 600.5805(2).[13]  A claim under

the PPPA is a claim for injury to a person—period.  The Michigan legislature did

---

[12] It is not surprising that the PPPA specifically makes references to damages being
available for infliction of emotional distress, as a large majority of invasion of
privacy claims analyzed by Michigan courts are accompanied by claims of
intentional infliction of emotional distress. *See. e.g., Smith v. Calvary Christian
Church*, 614 N.W.2d 590 (Mich. 2000); *Dalley v. Dykema Gossett,* 788 N.W.2d 679
(Mich. Ct. App. 2010); *Lewis v. LeGrow*, 670 N.W.2d 675 (Mich. Ct. App. 2003);
*Mills*, 536 N.W.2d 824; *Duran v. Detroit News, Inc.*, 504 N.W.2d 715 (Mich. Ct.
App. 1993); *Fry v. Ionia Sentinel-Standard*, 300 N.W.2d 687 (Mich. Ct. App. 1980).

[13] Unless it falls within one of the specific sub-sections of Section 600.5805, which
no party here contends.

not double the limitations period for invasion-of-privacy claims merely by enacting the PPPA. Plaintiff's claims are barred by Section 600.5805(2) and should be dismissed.

## II. Alternatively, To The Extent Plaintiff Asserts a Bare Statutory Violation Rather Than a Claim For Personal Injury, Plaintiff Lacks Article III Standing And Dismissal Is Required Under Rule 12(b)(1).

Plaintiff's presumptive response to the statute of limitations argument raised above will inevitably place him in a bind with respect to his standing to bring this suit. That is because, irrespective of how this Court comes out on the statute of limitations issue, if Plaintiff admits that his claim is not one for "personal injury" and has "no common law analogue," then this case must be dismissed for a lack of standing under Article III under recent Supreme Court precedent.

To establish Article III standing, a plaintiff must show "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The injury in fact may not be "conjectural or hypothetical." *Spokeo v. Robins*, 578 U.S. 330, 339 (2016). A plaintiff does not automatically have standing to sue simply because a statute provides for a cause of action and statutory damages; a plaintiff must still allege "a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (citing *Spokeo*, 578 U.S. at 341). "That

inquiry asks whether plaintiffs have identified a close *historical or common-law analogue* for their asserted injury." *Id.* (emphasis added).

In *TransUnion*, the Supreme Court held that, in addition to physical and monetary harms, "intangible harms can also be concrete," citing the "disclosure of private information" as one example because it bears "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 2204. The Court held that allegations of violations of the Fair Credit Reporting Act established standing for those plaintiffs whose misleading credit information was disclosed to a third-party—but insufficient for those plaintiffs that failed to allege any actual disclosure. This is because "the harm from a misleading statement of this kind bears a sufficiently close relationship to the harm from a false and defamatory statement," which established a "concrete injury." *Id.* at 2209. Those plaintiffs that did not allege any such disclosure lacked Article III standing because they did not allege any injury that was analogous to common-law tort injury. *Id.*

In this case, like in *TransUnion*, Plaintiff *only* has Article III standing to assert his claim for statutory damages *to the extent* that he alleges a personal injury that is closely analogous to a common law tort injury. *E.g.*, *Advance Mag. Publishers Inc.*, 210 F. Supp. 3d at 590 (explaining that post-*Spokeo*, it is "'instructive to consider whether an alleged intangible harm,'" like an alleged violation of the PPPA, "'has a

close relationship to a harm that has been traditionally regarded as providing a basis for a lawsuit in English or American courts'") (quoting *Spokeo*, 578 U.S. at 341).

Thus, Plaintiff here is caught in a double-bind: either he has alleged a personal injury analogous to a traditional common-law tort claim, in which case he has standing but his claim is time-barred—or he has alleged a purely statutory injury, in which case he lacks standing to sue.

The defendants in both *Pratt* and *Hall* raised this same standing issue in its recent motion to dismiss that PPPA action, but those courts rejected defendants' arguments on the grounds that prior decisions, including the Sixth Circuit in *Coulter-Owens*, have already determined that a properly pleaded PPPA complaint confers Article III standing.   But those courts found Article III standing because—at Plaintiff's counsel's urging—the PPPA has "close ties to the common law tort of invasion of privacy." *Advance Magazine Publishers,* 210 F. Supp. 3d at 590.[14]   To win on the statute of limitations argument, however, Plaintiff must admit there is no "common-law analogue" to his claim.  If the Court agrees with Plaintiff on his statute of limitations argument, that is tantamount to accepting that there is no "common-law analogue" to Plaintiff's claim.   And without a common law analogue for

---

[14] *E.g. Coulter-Owens*, 16-1321 (6th Cir.), Plaintiff-Appellant First Brief, ECF 36 at 62 (arguing Article III standing existed because "[t]he PPPA—affording privacy to a consumer's reading purchases and providing a cause of action for an invasion of this privacy—is simply an extension of these well-established common law claims").

Plaintiff's claim and no actual injury suffered, Plaintiff *cannot* have standing, particularly in light of *TransUnion*'s latest mandate.

Thus, whether it is on statute of limitations grounds or on standing grounds, this Court must dismiss this action.

## CONCLUSION

For the reasons stated above, the Complaint should be dismissed with prejudice.

Date: May 23, 2022

Respectfully submitted,
/s/ *Kristen C. Rodriguez*
DENTONS US LLP
Natalie J. Spears
Kristen C. Rodriguez
Emily A. Golding
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel: (312) 876-8000
natalie.spears@dentons.com
kristen.rodriguez@dentons.com
emily.golding@dentons.com

Clark Hill PLC
Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
151 South Old Woodward Avenue,
Suite 200
Birmingham, MI 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant American City*
*Business Journals, Inc.*

## <u>Certificate of Service</u>

I hereby certify that on May 23, 2022, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen Rodriguez